UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| HUBERT E. STUMP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AMENDED COMPLAINT** |
| | ) | |
| PREMIER HEALTHCARE SOLUTIONS, | ) | Civil Action No.: 3:24-cv-881 |
| INC. f/k/a PREMIER, INC.; UofL | ) | [Jury Trial Demanded] |
| HEALTH, INC.; and UofL HEALTH- | ) | |
| LOUISVILLE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

NOW COMES Plaintiff, Hubert E. Stump, by and through undersigned counsel, and pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure amends his complaint against Defendants PREMIER HEALTHCARE SOLUTIONS, INC. f/k/a PREMIER, INC.; UofL HEALTH, INC.; and UofL HEALTH-LOUISVILLE, INC., as follows:

## INTRODUCTION AND NATURE OF THE CASE

Plaintiff brings this action against Defendants for age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), and wrongful discharge in violation of North Carolina and/or Kentucky public policy as set forth in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2 ("NCEEPA") and/or Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 *et seq.*, based on his age. Plaintiff seeks all available remedies including, but not limited to, compensatory, punitive and liquidated damages, as well as available equitable relief pursuant to 29 U.S.C. § 626, and as otherwise authorized by law.

1

## JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims for relief asserted herein arise under federal law, and pursuant to 28 U.S.C. § 1343(a)(4), as the claims herein seek relief under acts of Congress providing for the protection of civil rights.

2.     This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a).

3.     This Court has personal jurisdiction over Defendant Premier Healthcare Solutions, Inc., ("Premier") because it operates within the State of North Carolina and within this District and its principal place of business is in Charlotte, North Carolina located at 13034 Ballantyne Corporate Place, Charlotte, Mecklenburg County, North Carolina 28277.

4.     This Court has personal jurisdiction over Defendants UofL Health, Inc. and UofL Health-Louisville, Inc. (collectively, "UofL") because UofL has established minimum contacts with the state of North Carolina such that it has purposely availed itself of the privilege of conducting activities within North Carolina and thus invoking the benefits and protections of its laws, and as such knew or should have known that it would be reasonable for it to be haled into a North Carolina federal court in the event of a legal dispute. Specifically, upon information and belief:

> a.  Solicited the services of Defendant Premier, a healthcare improvement company that provides healthcare solutions, such as group purchasing organizations, to two-thirds of all healthcare providers in the United States, including healthcare providers located in North Carolina;

2

b. Hired, voluntarily contracted with, paid, and maintained a long-standing commercial business contract and customer-vendor relationship with Defendant Premier, in which Premier provided it not only with employees to be placed at UofL but also included UofL in its group organization cost-cutting efforts; and

c. The GPO master agreement negotiated between UofL and Premier, Inc. indicated that in the event of a legal dispute, the parties agreed that the laws of North Carolina would apply, and any legal actions would be initiated in North Carolina.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant Premier is a resident of this District as defined by 28 U.S.C. § 1391(c) and maintains its principal place of business within this District.

## PARTIES

6. Plaintiff Hubert E. Stump ("Plaintiff" or "Mr. Stump") is a citizen and resident of Knox County, Tennessee, and is 53 years of age.

7. Defendant Premier Healthcare Solutions, Inc. employed Mr. Stump from April 2020 until it terminated his employment on or about May 12, 2023. At all times relevant hereto, Plaintiff constituted an "employee" pursuant to all applicable statutes.

8. Defendant Premier Healthcare Solutions, Inc. ("Premier") is a foreign corporation organized and existing under the laws of the State of Delaware. Defendant Premier is authorized to do business in the State of North Carolina and maintains its principal office at 13034 Ballantyne Corporate Place, Charlotte, Mecklenburg County, North Carolina 28277.

9.      Defendant Premier conducts business in healthcare supply chain management and leverages a network of over 4,000 member hospitals and health systems across the country, including but not limited to North Carolina systems, to reduce costs for its members.

10.      Defendants UofL Health, Inc. and UofL Health-Louisville, Inc. (collectively, "UofL") are both corporations organized and existing under the laws of the State of Kentucky, and both maintain their principal place of business at 530 South Jackson Street, Louisville, Kentucky 40202.

11.      Upon information and belief, at all times relevant to this Complaint, Premier and UofL maintained a contractual relationship under which Defendant Premier provided employees to work on-site at UofL to provide supply chain management and cost management services to UofL utilizing Premier's proprietary systems and supplier networks. At all relevant times, all Defendants constituted an "employer" pursuant to all applicable statutes and legal standards.

12.      At all times relevant to this Complaint, Defendants have continuously constituted an employer engaged in an industry affecting commerce in accordance with 29 U.S.C. § 621 *et seq.* and have employed at least twenty (20) employees.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.      Mr. Stump timely signed and file a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Louisville Area Office, on or about September 28, 2023, alleging violations of his federally protected civil rights. Upon information and belief, Mr. Stump allege he had been the victim of age discrimination by Defendant Premier and Defendant UofL.

14.      The EEOC Louisville Area Office issued Mr. Stump a Notice of Right to Sue on or about July 1, 2024 and carbon copied the EEOC Charlotte Area Office.

4

15.     Mr. Stump complied with all deadlines related to the investigation of his formal administrative complaint.

16.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

17.     Plaintiff reiterates and realleges each of the preceding paragraphs and incorporates each by reference as if fully set forth herein.

18.     Mr. Stump was hired by Defendant Premier in April 2020, as a Region Director assigned to Premier's University of Louisville Health ("UofL") account in Louisville, Kentucky. As Region Director, Mr. Stump was responsible for performing complex pricing analysis for cost savings across more than 100 individual products using the Premier network and presenting cost-saving opportunities to Premier's client, UofL.

19.     Mr. Stump had previously worked for Defendant Premier from approximately 2014 to 2017, and was eligible for rehire in 2020, in part because he had never received negative feedback or negative performance reviews during his prior tenure with Premier.

20.     Premier placed Mr. Stump internally at UofL to assist with supply chain management and to provide cost analysis services to UofL utilizing Premier's proprietary systems and supplier networks.

21.     When Mr. Stump was hired, he reported to Brandy Fehrenbach ("Fehrenbach"), then 37 years old (now 41 years old), Premier's Senior Region Director; Mark Slone, Senior Vice President with Premier; and Robert VanBuskirk, UofL's Vice President of Supply Chain.

22.     In the fall of 2020, Premier hired a new Senior Vice President, Dena McCormick ("McCormick"), to replace Mark Slone. On May 21, 2021, McCormick commented that part of her job was to "help some of those in a different season in life be successful outside of Premier."

5

23. After McCormick was hired, Fehrenbach was promoted twice, replacing significantly older employees who were forced to resign or fired by McCormick. Specifically:

    a. In late 2021, Fehrenbach absorbed the account managed by Craig Seaman, another Senior Region Director, for which, upon information and belief, she received a pay raise. Seaman was approximately 54 years old at the time, while Fehrenbach was approximately 39 years old.

    b. In approximately October 2022, Fehrenbach was again promoted to replace Chuck Hagen to become Vice President of Account Management – South. Hagen was approximately 57 years old at the time, while Fehrenbach was approximately 39 or 40 years old.

24. Fehrenbach remained Mr. Stump's direct supervisor at Premier.

25. For over two (2) years, Mr. Stump met and exceeded all of his performance and sales goals with Premier and never received negative performance-related feedback nor any negative performance reviews.

26. During this time, nearly every tenured employee around Mr. Stump's age was terminated or pressured to resign from Premier. It became apparent that McCormick was looking for reasons to let go every person over the age of 50.

27. Further, upon information and belief, Premier hired considerably younger, less qualified employees to replace those employees under McCormick's supervision who were fired.

28. In early January 2023, Mr. Stump attended a quarterly check-in with Fehrenbach, during which she specifically complimented him on his excellent performance in his position within UofL.

29.     On or about January 23, 2023, UofL hired Laura Polson ("Polson") as its Clinical Director of Value Analysis. When Polson was hired, she became Mr. Stump's supervising contact within UofL. By the time Polson was hired, Mr. Stump was, upon information and belief, the oldest Premier employee remaining in a position similar to his.

30.     Shortly after Polson was hired, she began refusing to work with Mr. Stump, resisting becoming familiar with the Premier tools available to UofL, and being hostile toward Mr. Stump. For example, Polson routinely questioned data Mr. Stump provided (the same data he had been providing without negative feedback for years prior to Polson's hire), requesting information she knew or should have known was not available, through no fault of Mr. Stump, and creating extra work for Mr. Stump outside of his job description.

31.     Mr. Stump began complaining to Fehrenbach about Polson's behavior less than a month after Polson was hired. In mid-March, 2023, Mr. Stump met with Fehrenbach and McCormick to follow up on the hostility from Polson. Mr. Stump told Fehrenbach and McCormick that in order to be successful working with Polson, he needed an additional analyst, similar to other Premier Region Directors working with other healthcare providers. Premier, by and through McCormick and its other supervisory and managerial staff, refused to provide Mr. Stump with the additional support requested, despite providing it to other, younger Region Directors.

32.     In late-March, 2023, Mr. Stump reported to Fehrenbach that Polson's behavior toward him was not improving, and that he still was not getting any support from McCormick. Specifically, Mr. Stump told Fehrenbach he felt he was being subjected to a hostile work environment based on his age.

33.     For example, after Mr. Stump began complaining to Fehrenbach and McCormick about Polson's behavior, her behavior only got worse. She continued to refuse to work with Mr.

Stump, became very argumentative toward him, and continued to have unrealistic expectations as described hereinabove. Polson's colleagues joined her in harassing Mr. Stump including, but not limited to, the following:

a. Zachary Bloyd (UofL's Executive Director of Supply Chain Contracting and Clinical Engineering; mid-30s) called Mr. Stump a "boomer"; and

b. Evan Hersch (UofL's Purchasing Director; mid-30s) called Mr. Stump a "dumb son of a bitch".

34.    Fehrenbach told Mr. Stump she would contact Premier's Human Resources ("HR") department for guidance on how to proceed. Shortly thereafter, HR dismissed Mr. Stump's complaints of hostile work environment and told him that he needed to continue to perform his duties. HR further told Mr. Stump that if he refused to work with UofL, Premier would consider him as having resigned from his position.

35.    On or about March 31, 2023, Fehrenbach offered to have Mr. Stump work remotely to avoid interacting with Polson, especially in light of the lack of support from HR. Mr. Stump accepted and continued to perform his job duties for UofL remotely.

36.    Shortly thereafter, Mr. Stump received a text message from a colleague at UofL informing him they had been told he had surrendered the UofL account and was resigning from his position with Premier, which was not true.

37.    On April 12, 2023, Mr. Stump met with Fehrenbach and McCormick virtually. During this call, Fehrenbach and McCormick told Mr. Stump there were issues with his recent analyses, which confused Mr. Stump because he had been performing these analyses the same way for years. When Mr. Stump pointed out this fact, Fehrenbach and McCormick then went on to praise his work (after having just criticized it).

8

38. McCormick encouraged Mr. Stump to apply to other positions within Premier and told him that she would contact any hiring manager on his behalf to help him find a new position. This further confused Mr. Stump because Fehrenbach and McCormick had just told him he was being removed from his position with UofL based on "poor performance" but then being told they would gladly help him find another position within Premier.

39. During a subsequent call with Fehrenbach discussing his attempts to find a new position within Premier, Fehrenbach admitted to Mr. Stump that VanBuskirk had never indicated any problems with Mr. Stump or his performance, and that the complaints about his performance only began after Polson was hired.

40. Mr. Stump indicated that he had applied to another Premier position and asked McCormick to reach out to the hiring manager to put in a positive reference for him; however, upon information and belief, McCormick made no effort to assist Mr. Stump with locating another position with Premier.

41. Mr. Stump was instructed to continue to perform his job duties while he attempted to locate another position with Premier, which he did.

42. On May 12, 2023, Mr. Stump again met with Fehrenbach, McCormick, and Senior Director of Human Resources, Brandon Rushing ("Rushing"). During this call, McCormick indicated that because Mr. Stump had shown no improvement in his quality of work, he could resign or be fired.

43. In response, Mr. Stump indicated that his performance had only been questioned after he complained of a hostile work environment based on age. Defendant, through Fehrenbach, McCormick, and Rushing, refused to address his concerns, and fired Mr. Stump.

44.     Upon information and belief, Defendant hired a significantly younger, less experienced candidate to replace Mr. Stump.

## FIRST CLAIM FOR RELIEF
### Hostile Work Environment based on Age in
### Violation of the ADEA, 29 U.S.C. § 621 *et seq.*

45.     Plaintiff reiterates and realleges each of the preceding paragraphs and incorporates each by reference as if fully set forth herein.

46.     Mr. Stump was subjected to continuous unwelcome harassment by his UofL coworker harassers on a daily basis.

47.     UofL's employees, including Polson, Bloyd, and Hersch, harassed Mr. Stump by, including but not limited to:

    a.  Polson refused to work with Mr. Stump, accused him of providing incorrect or insufficient data (despite him following the same procedures he had for the years prior), and requesting data she knew he could not obtain using Premier's tools and systems;

    b.  Bloyd called Mr. Stump a "boomer" and routinely behaved in a derogatory manner toward him because of his age;

    c.  Hersch called Mr. Stump a "dumb son of a bitch" and routinely behaved in a derogatory manner toward him because of his age; and

    d.  In other ways that may be determined through discovery and/or proven at trial.

48.     Defendants' supervisory and managerial staff knew or should have known of the harassment Mr. Stump was forced to endure on a daily basis, but failed to take any actions to stop it. Specifically:

a. Mr. Stump complained to Fehrenbach and McCormick multiple times about Polson's and her colleagues' behavior;

b. Fehrenbach told Mr. Stump she would contact HR to seek guidance, and, upon information and belief, she did so;

c. Fehrenbach told Mr. Stump he could work remotely for UofL to minimize his interactions with Polson and her colleagues;

d. Upon information and belief, UofL knew of the hostility Mr. Stump was experiencing from at least mid-March 2023 and, in any event, no later than March 31, 2023, when Mr. Stump was authorized by Premier to work remotely because of the hostility; and

e. In other ways that may be determined through discovery and/or proven at trial.

49. The harassment Mr. Stump endured was unwelcome and he took actions to stop it, including but not limited to:

a. Mr. Stump complained to Fehrenbach, McCormick, and Premier's HR department multiple times regarding the harassment from UofL's employees, including Polson;

b. Mr. Stump agreed to work remotely to minimize his interactions with Polson and other UofL employees who were harassing him;

c. Mr. Stump attempted to find another position within Premier to escape the harassment from UofL's employees; and

d. In other ways that may be determined through discovery and/or proven at trial.

50. Said unwelcome harassment was subjectively sufficiently severe and pervasive that it altered the conditions of Mr. Stump's employment and created an abusive work environment,

which prompted Mr. Stump to report Polson's and her colleagues' behavior to Defendants. Mr. Stump specifically told Defendants' representatives that Polson's and her colleagues' behavior made him feel that he was being subjected to a hostile work environment.

51. Said unwelcome harassment was objectively sufficiently severe and pervasive in that a reasonable person could conclude so based on the frequency of the unwelcome harassment, its severity, and its humiliating impact on Mr. Stump, including but not limited to:

    a. The frequency with which Polson and other employees engaged in age-related and age-motivated comments toward Mr. Stump;

    b. The frequency with which Polson criticized Mr. Stump's work product and performance;

    c. The severity of Polson's and her colleagues' hostility toward Mr. Stump, which only escalated after Mr. Stump attempted to address his concerns by reporting them to Fehrenbach, McCormick, and Premier's HR department;

    d. Mr. Stump was made to feel uncomfortable, unsafe, and singled out;

    e. The complaints Mr. Stump made to Defendants' representatives yielded no recourse for Polson's or her colleagues' behavior, and instead, resulted in Mr. Stump being fired; and

    f. In other ways that may be determined through discovery and/or proven at trial.

52. Defendants are jointly and severally liable to Mr. Stump for the harassment he endured at the hands of his coworker harassers because Defendants had actual knowledge of the harassment and failed to take any remedial action. Defendants failed to properly supervisor Polson, Bloyd, and Hersch to ensure that they were behaving appropriately. Further, Premier's HR

department insisted that Mr. Stump return to work with UofL, which he did, despite his complaints, because HR threatened to fire him if he did not.

53.     In addition, Defendants perpetuated the harassment and hostility by failing to conduct a proper investigation into Mr. Stump's complaints and failing to take any disciplinary action against Polson, Bloyd, or Hersch. Upon information and belief, none of these employees were ever disciplined for their behavior.

54.     From January 2023 through March 2023, Defendants engaged in unlawful employment practices in violation of the ADEA, 29 U.S.C. § 621 *et seq.* Specifically, Defendants subjected Mr. Stump to a hostile work environment based on his age.

55.     Defendants acted intentionally, maliciously, and with reckless indifference to Mr. Stump's federally protected right to be free from a hostile work environment based on his age by failing to investigate his complaints, refusing to take any action to stop the harassment, and by perpetuating the hostile work environment as described hereinabove.

56.     As a direct, proximate, and reasonably foreseeable result of Defendants' violations of the ADEA as described herein, Mr. Stump has suffered and continues to suffer damages, including lost wages, lost benefits, emotional distress, pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

57.     As a result of all of Defendants' acts and omissions as set forth herein, Defendants are jointly and severally liable to Mr. Stump for all damages sustained due to Defendants' unlawful conduct including, but not limited to, front pay, back pay, compensatory damages, punitive damages, costs, attorneys' fees, etc.

58.     Further, the foregoing conduct constitutes a willful violation of the ADEA within the meaning of 29 U.S.C. § 626(b) and, as a result, Mr. Stump is entitled to liquidated damages.

## SECOND CLAIM FOR RELIEF
### Age Discrimination in Violation of the ADEA, 29 U.S.C. § 621 *et seq.*

59. Plaintiff reiterates and realleges each of the preceding paragraphs and incorporates each by reference as if fully set forth herein.

60. At all times relevant, Mr. Stump constituted an "employee" within the meaning of the ADEA.

61. At all times relevant, Defendants each constituted an "employer" within the meaning of the ADEA.

62. At all times relevant to this Complaint, Mr. Stump was forty years old or older, and therefore meets the threshold age requirement of the ADEA.

63. Mr. Stump was more than qualified to work as a Region Director for Premier. He successfully performed his job duties at UofL for over two years prior to the management changes at UofL and the subsequent events alleged herein.

64. Defendants knew and acknowledged that Mr. Stump was qualified to, and did perform his job duties at or above Defendants' expectations. Specifically, as recently as January 2023, Mr. Stump received a quarterly check-in and review from Fehrenbach, during which she specifically noted how well he was performing in his position with UofL. Additionally, during a call with Fehrenbach to discuss Mr. Stump's attempts to find a new position with Premier, Fehrenbach acknowledged that VanBuskirk was happy with Mr. Stump and had no complaints about his performance, and that the complaints only began after Polson was hired.

65. During his tenure with Defendants, Mr. Stump performed his job above Defendants' legitimate expectations. He consistently received glowing reviews from his supervisors, and met or exceeded his performance goals every year, including becoming eligible for performance-based bonuses every year.

14

66. Though Mr. Stump was highly qualified and performed his duties as a Region Director above and beyond Defendants' expectations, he nevertheless suffered an adverse employment action when Premier fired him on May 12, 2023.

67. UofL harassed and treated Mr. Stump less favorably than its younger employees, solely because of his age. For example, UofL employees called Mr. Stump "boomer" and "dumb son of a bitch". Further, Polson refused to work with Mr. Stump, requested data she knew Mr. Stump could not provide using Premier's tools and systems, and routinely questioned data Mr. Stump provided, even though he had been providing the same types of data for years.

68. Premier treated Mr. Stump less favorably than its younger Region Directors, solely because of his age. Upon information and belief, at and around the time Premier fired Mr. Stump, it continued to hire younger and less qualified Region Directors.

69. Upon information and belief, at the time Premier fired Mr. Stump, he was the oldest remaining Region Director under McCormick's supervision. All other Region Directors of a similar age under her supervision with Premier had been removed from their positions since her arrival, which was consistent with her stated goal of "help[ing] some of those in a different season in life be successful outside of Premier."

70. In terminating Mr. Stump, Premier engaged in unlawful employment practices in violation of the ADEA. Specifically, Premier, through its managerial staff, discriminated against Mr. Stump by terminating him, providing clearly false justification for such termination, and by replacing him with, upon information and belief, a substantially younger and less qualified Region Director.

71. By terminating Mr. Stump and replacing him with a substantially younger and less qualified Region Director, Premier, through its managerial staff, acted intentionally, consciously,

and with reckless indifference to Mr. Stump's federally protected right to be free from age discrimination. Premier intentionally pushed out and/or fired all of its older Region Directors until only Mr. Stump remained, and ultimately fired Mr. Stump in a similar manner.

72. Defendants' conduct, by and through its supervisory and managerial staff, deprived Mr. Stump of equal employment because of his age.

73. It was reasonably foreseeable that, as a result of this unlawful termination, Mr. Stump would incur damages, including but not limited to, lost wages.

74. As a direct, proximate, and reasonably foreseeable result of Defendants' violations of the ADEA as described herein, Mr. Stump has suffered and continues to suffer damages, including lost wages, lost benefits, emotional distress, pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

75. As a result of all of Defendants' acts and omissions as set forth herein, Defendants are jointly and severally liable to Mr. Stump for all damages sustained due to Defendants' unlawful conduct including, but not limited to, front pay, back pay, compensatory damages, punitive damages, costs, attorneys' fees, etc.

76. Further, the foregoing conduct constitutes a willful violation of the ADEA within the meaning of 29 U.S.C. § 626(b) and, as a result, Mr. Stump is entitled to liquidated damages.

**THIRD CLAIM FOR RELIEF**
**Retaliation in Violation of the ADEA, 29 U.S.C. § 621 *et seq*.**

77. Plaintiff reiterates and realleges each of the preceding paragraphs and incorporates each by reference as if fully set forth herein.

78. Shortly after Mr. Stump began complaining to Defendants, through Fehrenbach and McCormick, about Polson's and her colleagues' harassment and hostility toward him, Polson's

and her colleagues' behavior only worsened. Defendants did nothing to address Polson's behavior in response to Mr. Stump's complaints.

79.     A few weeks after Mr. Stump began complaining about Polson's behavior, Premier instructed Mr. Stump to work remotely. Mr. Stump then learned through a UofL colleague that Fehrenbach told UofL that Mr. Stump had surrendered the UofL account and was leaving Premier, which was not true. This took place before Mr. Stump had even discussed with Fehrenbach and McCormick the possibility of finding a new position within Premier.

80.     After McCormick instructed Mr. Stump to find a new position within Premier, she offered to provide a positive reference to any Premier hiring managers, to help him secure another position. However, upon information and belief, she made no effort to assist him with finding a new position with Premier.

81.     Premier then abruptly fired Mr. Stump on May 12, 2023, based on "poor performance" despite there being no complaints about his performance until Polson started working for UofL, and Mr. Stump began complaining about her hostility toward him.

82.     A causal connection exists between Mr. Stump's complaints of discrimination and hostile work environment and Premier's termination of his employment based on the temporal proximity between his complaints of discrimination and hostility and the adverse employment action. Premier placed Mr. Stump on remote work within weeks of his initial complaints, and then, while he was working remotely and before instructing him to begin looking for another position with Premier, told UofL Mr. Stump had surrendered his account and was leaving the company.

83.     Further, Premier told UofL Mr. Stump was leaving Premier, then later told Mr. Stump to find a new position within Premier, demonstrating that their ultimate goal was to fire Mr. Stump, and that the instructions to look for a new position were merely to hide their true intention

to ultimately fire him. This is further apparent in light of McCormick not providing positive references for Mr. Stump as she promised when instructing him to search for a new position.

84. Defendants, by and through their managerial and supervisory employees, retaliated against Mr. Stump because he complained he was being harassed, discriminated against, and subjected to a hostile work environment based on his age.

85. As a direct, proximate, and reasonably foreseeable result of Defendants' retaliation as described herein, Mr. Stump has suffered and continues to suffer damages, including lost wages, emotional distress, pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

86. As a further direct, proximate, and reasonably foreseeable result of Defendants' retaliation as described herein, Mr. Stump is entitled to recover all damages and remedies available pursuant to law, including, but not limited to, front pay, back pay, compensatory damages, punitive damages or liquidated damages, costs, attorneys' fees, etc.

## FOURTH CLAIM FOR RELIEF
### Wrongful Discharge in Violation of North Carolina and/or Kentucky Public Policy

87. Plaintiff reiterates and realleges each of the preceding paragraphs and incorporates each by reference as if fully set forth herein.

88. As set forth herein, Defendants unlawfully discriminated and retaliated against Mr. Stump because of his age, in violation of the ADEA.

89. Additionally, Defendants' acts, as described hereinabove, contrave, and violate the public policy of the State of North Carolina as set forth in North Carolina's Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2 ("NCEEPA") and/or the Commonwealth of Kentucky as set forth in the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 *et seq*. ("KCRA").

90.	NCEEPA declares that it is the policy of the State of North Carolina to "protect and safeguard the right and opportunity of all persons to seek, obtain and *hold employment* without discrimination or abridgement on account of…*age*…" *See* N.C. Gen. Stat. § 143-422.2 (emphasis added).

91.	KCRA declares that it is the policy of the Commonwealth of Kentucky to "safeguard all individuals within the state from discrimination because of…age…to make available to the state their full productive capacities…." *See* Ky. Rev. Stat. § 344.020(b).

92.	As set forth above, Defendants engaged in unlawful employment practices in violation of North Carolina and/or Kentucky law. Specifically, Defendants, through their supervisory and managerial staff, discriminated against Mr. Stump by subjecting him to a hostile work environment and terminating him in retaliation for complaining about the age-related harassment and hostile work environment he was forced to endure on a daily basis, thereby denying him the opportunity to "hold employment without discrimination…on account of…age…" and/or to be "safeguard[ed]…from discrimination because of…age…" in violation of North Carolina and/or Kentucky public policy as codified in NCEEPA and/or KCRA. As a result, Defendants' harassment, retaliation, and retaliatory termination of Mr. Stump constitutes wrongful discharge under North Carolina and/or Kentucky law.

93.	Mr. Stump's age, as well as his complaints about Defendants' discriminatory practices and hostile work environment, as described herein, were the direct, proximate, and foreseeable cause of, and/or a substantial factor in, Defendants' decision to terminate his employment.

94.	Defendants' actions, as described hereinabove, violated NCEEPA and KCRA, among other statutes, and offended North Carolina's and/or Kentucky's public policy of protecting

an employee's right to hold employment without discrimination based on age. Mr. Stump was wrongfully terminated in violation of public policy because he opposed and complained about the discriminatory practices and hostile work environment caused and perpetuated by Defendants. Therefore, Mr. Stump is entitled to compensation for lost wages, lost benefits, front pay, back pay, economic losses, and any other applicable damages pursuant to North Carolina and/or Kentucky law.

## JURY DEMAND

Plaintiff demands a trial by jury on the claims asserted in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for judgment against Defendants to the full extent permitted by 29 U.S.C. § 626, 29 U.S.C. § 216, and as otherwise permitted by any other applicable statutes, including, but not limited to, the following:

1. Judgment in Plaintiff's favor, determining that Defendant Premier's actions and conduct towards and relating to Plaintiff violated the ADEA and North Carolina and/or Kentucky public policy;

2. Judgment in Plaintiff's favor, determining that Defendant UofL Health, Inc.'s actions and conduct towards and relating to Plaintiff violated the ADEA and North Carolina and/or Kentucky public policy;

3. Judgment in Plaintiff's favor, determining that Defendant UofL Health-Louisville, Inc.'s actions and conduct towards and relating to Plaintiff violated the ADEA and North Carolina and/or Kentucky public policy;

4. Award Plaintiff all monetary damages incurred, including but not limited to, back pay, front pay, interest, and benefits;

5.      Award Plaintiff damages for mental anguish, emotional distress, and other non-pecuniary damages;

6.      Award Plaintiff liquidated and/or punitive damages as a result of the intentional unlawful actions and conduct of Defendants under the ADEA;

7.      Award Plaintiff the costs, disbursements, expenses, reasonable attorneys' fees, and expert witness fees incurred by Plaintiff in filing and prosecuting this action pursuant to 29 U.S.C. § 216 and/or as may be authorized by any other applicable federal and state laws;

8.      For an award of pre- and post-judgment interest to Plaintiff on all damages; and

9.      For all other, further relief as this Court deems just and appropriate.

Respectfully submitted, this the 16th day of December, 2024.

**GREEN MISTRETTA LAW, PLLC**


/s/ Dawn T. Mistretta
Dawn T. Mistretta, N.C. State Bar No. 31691
Stanley B. Green, N.C. State Bar No. 25539
1752 Heritage Center Drive, Suite 101
Wake Forest, North Carolina 27587
Telephone: (919) 278-7453
Facsimile: (855) 876-8893
dmistretta@gmlawyers.org
sgreen@gmlawyers.org
*Counsel for Plaintiff*

21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing *Amended Complaint* was this day electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

This the 16th day of December, 2024.


/s/ Dawn T. Mistretta
Dawn T. Mistretta